IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON ELIZABETH DUKE, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:05-cv-367-MEF |
| | ) | |
| HOUSTON COUNTY, ALABAMA, *et al.,* | ) | (WO- Not Recommended for Publication) |
| | ) | |
| DEFENDANTS. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

A woman who alleges that she was arrested and jailed improperly after she reported

a sexual assault by a man employed by the Houston County Sheriff's Department brings suit

against the county, its sheriff, and a deputy sheriff.  Those defendants seek dismissal of all

claims against them in the Defendants Motion to Dismiss Plaintiff's Amended Complaint

(Doc. # 28) filed on May 17, 2006, which motion is now under submission and ready for a

ruling.  For the reasons set forth in this Memorandum Opinion and Order, the motion is due

to be GRANTED with all federal claims being dismissed with prejudice and all state law

claims being dismissed without prejudice.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331,

1343(a)(4), and 1367.  Additionally, defendants have not argued that the court does not have

personal jurisdiction over each of them.  There is no dispute over whether venue pursuant to

28 U.S.C. § 1391(b) is appropriate as alleged.

## PROCEDURAL HISTORY

On April 20, 2005, Sharon Elizabeth Duke ("Duke") filed this action against Houston County, a Houston County sheriff's deputy named Susan Seay ("Seay"), a Houston County "police officer" or deputy sheriff named Jason McCallister ("McCallister")[1], and the Houston County Sheriff's Department.

The Houston County Sheriff's Department filed a motion to dismiss arguing that it was not a entity that could be sued. Duke conceded that was the case and moved to dismiss that entity as a defendant. Thereafter, the Court granted the motion to dismiss, and the claims against the Houston County Sheriff's Department were dismissed. *See* Doc. # 18. The other defendants named in the Complaint also moved to dismiss. Because the Court found that the Complaint failed to comport with the Eleventh Circuit Court of Appeals' requirement that 42 U.S.C. § 1983 claims against individual defendants satisfy a "heightened pleading" standard, the Court required Duke to amend her complaint.

On April 10, 2006, Duke filed an Amended Complaint (Doc. # 21). In the Amended Complaint, Duke sets forth the following claims: (1) malicious prosecution in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count I); (2) violation of her Fourteenth Amendment right to equal protection brought pursuant to 42 U.S.C. § 1983

---

[1] In paragraph 9 of the Amended Complaint, Duke identifies McCallister as having "served as a Houston County police officer at all times material to this action." Doc. # 21 at ¶ 9. Other allegations in the Amended Complaint seem to indicate that McCallister was actually an officer with the Houston County Sheriff's Department. Doc. # 21 at ¶¶ 13, 21, & 29.

(Count II); (3) assault and battery pursuant to Alabama law (Count III); (4) malicious prosecution pursuant to Alabama law (Count IV); (5) "intentional infliction of emotional distress" pursuant to Alabama law (Count V); and negligent supervision, training, and retention pursuant to Alabama law (Count VI).  The Amended Complaint made it plain that it only contained claims pursuant to Alabama law against McCallister.  The Court declined to exercise supplemental jurisdiction over Duke's claims against McCallister and dismissed them without prejudice.  *See* Doc. # 34.

Thus, the only claims now pending before the Court are Duke's claims against Houston County, Alabama ("Houston County"), Lamar Glover the Sheriff of Houston County Alabama ("Glover"), and Seay.  Duke brings claims against Glover and Seay in both their individual and their official capacities.   Duke seeks compensatory and punitive damages, declaratory relief in the form of a declaration that her rights were and continue to be violated by the actions of these defendants, a permanent injunction enjoining the defendants from continuing to violate the Fourth Amendment, attorneys fees, costs, and expenses.  Houston County, Glover, and Seay contend that all claims against them are due to be dismissed.   Duke disagrees.

### FACTUAL PREDICATE ALLEGED IN THE AMENDED COMPLAINT

The following is a summary of the factual basis for the lawsuit as set forth by the allegations of the Amended Complaint (Doc. # 21).  Duke alleges that she is a licensed paramedic who at the time of the events giving rise to this action was working for Care

Ambulance and volunteering at Rehobeth Fire and Rescue.  She also alleges that she was previously employed by the Dothan Police Department.

Duke alleges that on August 12, 2003, she fell ill at her home.  She had a prior history of passing out and had medicine which she took to prevent it.   When she began to feel faint, nauseous, and sweaty, she called a female friend and asked the friend to bring a cardiac monitor to her house.  The friend did so and ran a cardiac test on Duke.  The results were irregular.   The friend urged Duke to go to the hospital, but Duke declined.

Later that afternoon, Duke was still not feeling any better so she called another female friend and asked her to take her to the hospital.  A few minutes later, McCallister[2] arrived at Duke's house to take her to the hospital.   McCallister took Duke to the hospital where she was given tests and medications including Adavan, morphine and Lorcet Plus.  McCallister brought Duke home from the hospital.  She told him to leave, but he insisted on staying at her home.  Duke fell asleep and was in and out of consciousness due to the medications she had been given at the hospital.   At various points, Duke woke up to find McCallister performing various sexual acts with her.  She protested and told him to stop and leave each time she awoke, but then she "passed out" again.  Duke did not consent to the sexual acts with McCallister.  At some point, McCallister left Duke's home.

Duke awoke the next afternoon.  Her body was very sore.  She did not feel safe in her

_____

[2] McCallister was at that time employed by the Houston County Sheriff's Office.  He was also Duke's ex-boyfriend.

own home.  She went to stay with a female friend.  While at the friend's house, Duke saw
McCallister repeatedly drive by the house and slow down as if watching the house.  Duke
was scared.  She told a friend's mother Ann Baxter ("Baxter") about what had happened.

Baxter, who at the time was a city magistrate, recommended that Duke file a police
report and seek a protective order against McCallister. Baxter scheduled an appointment for
Duke to speak with Scott Langley ("Langley"), a deputy sheriff with the Houston County
Sheriff's Department.  On August 14, 2003, Duke gave a statement to Langley complaining
of sexual assault by McCallister.  Langley told Duke that because McCallister was employed
by the Houston County Sheriff's Department, he would have to pass the information on to
other officers of the Houston County Sheriff's Department.

Seay, a Deputy Sheriff with the Houston County Sheriff's Department with the rank
of Lieutenant, called Duke in for an interview regarding the police report.  On August 19,
2003, Duke met with Seay.  Seay instructed Duke to write a statement.  Duke did so.  Duke
included first hand knowledge and second hand knowledge in her written statement.  Seay
then required Duke to submit to a video recorded interview.  Seay instructed Duke to only
provide first hand knowledge during this interview.  During this interview, Duke alleges that
Seay refused to listen to her, cut her off when she tried to explain what happened, and
accused her of "using" McCallister.  Seay repeatedly instructed Duke that she would not
listen to "hearsay" about the incidents.  Seay also allegedly insisted repeatedly that the sex
was consensual even though Duke was unconscious.

The interview upset Duke a great deal.  At one point she had to take a break and go to the rest room to cry.  At the end of the interview, Seay told Duke that McCallister had agreed to take a polygraph.[3]  Seay asked Duke to take one as well.  Duke did so.[4]  Upon leaving the polygraph test, Seay told Duke that Duke's police report was "unfounded" and cautioned her not to be surprised when charges were pressed against her because "the Sheriff didn't like people filing reports on his deputies."

On August 20, 2003, Seay filed a complaint against Duke for alleged false reporting in which she represented to the District Court of Houston County that she had probable cause to believe that Duke unlawfully and knowingly made a false report on August 14, 2003. Seay served as the complainant and as an identified witness.  Duke also alleges that Seay swore out an arrest warrant against Duke for the alleged false reporting of a crime.

On August 21, 2003, Seay executed the arrest warrant against Duke on behalf of Glover, by placing Duke under arrest at her place of employment and taking her to jail in a Houston County Sheriff's Department vehicle.  Duke was placed in the Houston County jail until her release on bond.  She was subsequently prosecuted on the charge.  She plead not

---

[3]  It is alleged that Seay had interviewed McCallister regarding Duke's complaint about him prior to her interview with the plaintiff.  The Amended Complaint is devoid of allegations regarding how Seay treated McCallister during her interview of him.

[4]  Duke has not alleged any information concerning the results of either her polygraph examination or McCallister's polygraph examination.

guilty to the charge and that charge was eventually "thrown out."[5]  Duke alleges that the

defendants acted with malice or deliberate or reckless indifference to her federally protected

rights causing her emotional distress, humiliation, inconvenience, mental anguish, loss of

enjoyment of life, physical injury, pain, and suffering.  She also alleges that the defendants

discriminated against her on the basis of her gender in that they discounted her statements

and allegations of sexual assault choosing instead to rely upon the McCallister's allegations.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Prior to the

Supreme Court's recent decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), a

motion to dismiss could only be granted if a plaintiff could prove "no set of facts . . . which

would entitle him to relief."  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also*

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964,

967 (11th Cir. 1986).[6]  Now, in order to survive a motion to dismiss for failure to state a

claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

face." *Twombly*, 127 S. Ct. at 1974.  While the factual allegations of a complaint need not

---

[5]  Duke also alleges that she was acquitted on the charge against her.  *See* Doc. # 21 at ¶ 35.

[6]  Duke relies heavily on *Conley* and its progeny and never addresses the new standard announced by the United States Supreme Court in *Twombly*.  Indeed, *Twombly* repudiates the reading of *Conley* on which Duke relies and clarifies that *Conley* merely describes "the breadth of opportunity to prove what an adequate complaint contains, not the minimum standard of adequate pleading to govern a complaint's survival."  127 S. Ct. at 1968-69 & n.8.

be detailed, a plaintiff must nevertheless "provide the 'grounds' of his 'entitlement to relief'

and a formulaic recitations of the elements of a cause of action will not do." *Id.* at 1965.

The plaintiff's "[f]actual allegations must be enough to raise a right to relief above a

speculative level on the assumption that the allegations in the complaint are true." *Id.* It is

not sufficient that the pleadings merely "le[ave] open the possibility that the plaintiff might

later establish some set of undisclosed facts to support recovery." *Id.* at 1968 (internal

quotation and alteration omitted). In considering a defendant's motion to dismiss, a district

court will accept as true all well-pleaded factual allegations and view them in a light most

favorable to the plaintiff. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057

(11th Cir. 2007). *Accord, Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is

considering dismissal of a complaint at the pleading stage, it must assume the allegations of

the complaint are true).

The federal claims in this action are brought against defendants pursuant to 42 U.S.C.

§ 1983. Section 1983 provides a remedy when person acting under color of state law

deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or

treaties of the United States. *See, e.g.,* 42 U.S.C. § 1983;[7] *Graham v. Connor*, 490 U.S. 386,

---

[7] Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation,

custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or

393-94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994).  To state a claim pursuant to § 1983, a plaintiff must point to a violation of a specific federal right.  *See, e.g., Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996).

## DISCUSSION

### A.  Liability of Houston County for Duke's Federal Claims

As previously stated, Duke brings her claims pursuant to § 1983 alleging that Seay and Glover violated her Fourth and Fourteenth Amendment rights and that Houston County is liable for those violations either because Seay and Glover were agents of Houston County by virtue of their employment with the Houston County Sheriff's Department or because Glover or Seay were insufficiently trained.[8]

With respect to all claims against it pursuant to federal law, Houston County has moved to dismiss on the ground that Glover and Seay are not policymakers for Houston County.  Local governmental entities, like Houston County, may be held liable under § 1983 only where the allegedly unconstitutional acts implement a policy of the local governmental

_____

other proper proceeding for redress.

[8]  Duke's allegations of the basis of Houston County's liability with respect to her claims pursuant to Alabama law is somewhat different than this, but the Court will address only the basis alleged in the Amended Complaint with respect to her federal claims in this section.

9

body.  *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1987);

*Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998).[9]  Thus, with respect to

the § 1983 claims, this Court must "identify those officials or governmental bodies who

speak with final policymaking authority for the local governmental actor concerning the

action alleged to have caused the particular constitutional or statutory violation at issue."

*McMillan v. Monroe County*, 520 U.S. 781 (1997) (internal quotations omitted).  "In other

words, the Court must determine whether the person or entity that made the policy at issue

speaks for the governmental entity being sued."  *McClure v. Houston County, Ala.,* 306 F.

Supp. 2d 1160, 1163 (M.D. Ala. 2003) (Thompson, J.).  This inquiry requires an analysis

_____

   [9]  Defendants correctly assert that *Monell* and its progeny make it plain that Houston County may not be held liable under a theory of *respondeat superior* for Duke's claims pursuant to § 1983.   Duke concedes this legal point but contends that she has not alleged *respondeat superior* as the basis for Houston County's liability. The Court is not certain that Duke is correct.  The allegations of the Amended Complaint do refer to the fact that Glover and Seay were employed by the Houston County Sheriff's Department.  Nevertheless, given that Duke admits that such allegations would be fruitless as a matter of law (Doc. # 32 at pp.8-9), the Court will assume any such claims, to the extent that the could be found in the Amended Complaint are due to be DISMISSED based on Duke's concession and the applicable law.  Additionally, the Court notes that it is frankly puzzled by Duke's argument concerning allegations in her Amended Complaint that *Houston County* "condoned, authorized, and/or ratified the conduct of the individual defendants."  This allegation is not found *anywhere* in the portions of Amended Complaint which set forth her claims pursuant to *federal* law.  This allegation is only made in Count III (assault and battery under Alabama law), Count IV (malicious prosecution under Alabama law), and Count V (intentional infliction of emotional distress under Alabama law).  Moreover, even if this basis had been properly alleged, the Court is not satisfied that Duke has offered legal authority which supports holding a county liable in an action brought pursuant to § 1983 for condoning, authorizing or ratifying conduct which violated a party's rights.  Thus, this argument cannot defeat Houston County's motion to dismiss.

10

under state law of whether governmental officials are final policymakers for the local government in a particular area or on a particular subject. *McMillan*, 520 U.S. at 785–86; *McClure*, 306 F. Supp. 2d at 1163. In this case, the specific question before this Court is whether Glover, the Houston County sheriff, or Seay, one of his deputy sheriffs, are "policymakers" for Houston County in the area of training employees of the Houston County Sheriff's Department or in the area of the Sheriff's Department's law enforcement activities.[10]

It is well-settled that under Alabama law, sheriffs and their deputies are state, and not county, officers. The Alabama Constitution includes sheriffs among the enumerated officers of the state executive department. Ala Const. Art. V, § 111 ("The executive department shall consist of a governor, lieutenant governor, attorney-general..., and a sheriff for each county."). Under Alabama law, deputies are the alter egos of the sheriff for whom they work. *See, e.g.*, *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1526 (11th Cir. 1990) (Alabama law deems acts of a deputy sheriff to be those of the sheriff); *Mosely v. Kennedy*, 17 So. 2d 536, 537 (Ala. 1944). The Alabama Supreme Court has repeatedly held that sheriffs and deputy sheriffs are state officials and not county officials. *See, e.g., Hereford v. Jefferson County*, 586 So. 2d 209, 210 (Ala. 1991)*; Parker v. Amerson*, 519 So. 2d 44, 442 (Ala. 1987). The United States Supreme Court has itself held that in Alabama sheriffs do not act as

---

[10] These pertinent law enforcement activities Duke has identified are: executing of warrants and conducting a criminal investigation.

"policymakers" for the county in the area of law enforcement for § 1983 purposes. *McMillan*, 520 U.S. 793.  Furthermore, the county and its commissioners have no authority to manage the sheriff's employees under Alabama law.  *See, e.g., Turquitt,* 137 F.3d at 1289; *Terry v. Cook*, 866 F.2d 373, 379 (11th Cir. 1989) (holding that county commissioners have no authority to hire or fire sheriff's deputies under Alabama law); *Raspberry v. Johnson,* 88 F. Supp. 2d 1319, 1325-26 (M.D. Ala. 2000); *Dowdell v. Chapman*, 930 F. Supp. 533, 547-49 (M.D. Ala. 1996) (finding that a county could not be liable for sheriff or deputy's law enforcement actions under § 1983, nor could it be liable for failing to train the sheriff or his deputies).  Based on these and similar cases, this Court has held also that the sheriff of Houston County was not a policymaker for Houston County with respect to his hiring, training and supervising of deputy sheriffs.  *See,  e.g., McClure,* 306 F. Supp. 2d at 1164.

Thus, as a matter of law, it is clear that neither Glover, nor Seay can be a policymaker for Houston County.  Houston County simply has no legal authority under Alabama law for training and supervision of the sheriff and his employees or for the sheriff's law enforcement activities.  All of Duke's allegations against Houston County arise out of areas in which it is clear as a matter of law that the sheriff and his deputies are not exercising county authority, but rather they are exercising authority as arms of the State of Alabama.  To the extent that the Amended Complaint seeks to impose liability against the Houston County for acts relating to the training of employees of the Houston County Sheriff's Department or for acts relating to law enforcement investigations or execution of law enforcement functions such

12

as execution of warrants, the claims are due to be DISMISSED.

To the extent that Duke's claim is that Houston County, itself, failed to train Glover, Seay, or McCallister, the federal claims against it are also due to be DISMISSED. A county "can be held liable on a failure-to-train claim only if those in supervisory positions fail to supervise subordinates in such a manner as to demonstrate 'deliberate indifference' to the constitutional rights of citizens." *Thomas v. City of Clanton*, 285 F. Supp. 2d 1275, 1282 (M.D. Ala. 2003) (Thompson, J.) (*quoting City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). *Accord, McClure*, 306 F. Supp. 2d at 1164. As discussed above, Houston County did not supervise Glover, Seay or McCallister.

Even assuming *arguendo* that Houston County could be said to have some supervisory responsibility for Glover, Seay or McCallister, Duke has not alleged, as she must, an adequate factual grounds for her entitlement to relief. Specifically, she has failed to allege an adequate factual basis for a plausible conclusion that Houston County was deliberately indifferent to the need for greater training.

> A plaintiff can show that a [county] was deliberately indifferent to the need for increased [training or supervision] by demonstrating: (1) a pattern of constitutional violations such that the [county] knows or should know that corrective measures are needed, or (2) that the violation of federal rights was a highly predictable consequence of the failure to equip law enforcement officers with specific tools [or training] to handle recurring situations.

*Id.* Duke has not alleged any such pattern of constitutional violations showing the need for corrective training. Duke has not alleged a factual basis from which one could argue that the violation of federal rights was a highly predictable consequence of the failure to provide

13

specific training to handle recurring situations.   For these reasons, all federal claims against Houston County are due to be DISMISSED.

**B.  Duke's Federal Claims Against Glover and Seay in Their Official Capacities**

      **1.  Compensatory and Punitive Damages Are Not Available**

A suit against a government official in his official capacity is considered a suit against the official's office itself.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  When that office is an arm of the state government, the Eleventh Amendment "protects the sovereignty of the state by prohibiting suits when recovery would be paid from state funds."[11] *Robinson v. Georgia Dep't of Transp.*, 966 F.2d 637, 638-39 (11th Cir. 1992); *see Edelman v. Jordan*, 415 U.S. 651 (1976) (defining scope of sovereign immunity under the Eleventh Amendment).

Under Alabama law, it is well-settled that sheriffs are executive officers of the state, and, as a result, suits against a sheriff are considered suits against the state. *Parker v. Amerson*, 519 So.2d 442, 442-43 (Ala.1987) ("A sheriff is an executive officer of the State of Alabama ...."); *see also McMillan v. Monroe County, Ala.*, 520 U.S. 781, 789 (1997) (holding that, based on an analysis of Alabama law, sheriffs are state officers and suits against them in their official capacity are suits against the state).   This immunity also extends to the sheriff's deputies. *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1526

---

[11] There is no indication that Alabama has waived its sovereign immunity.

(11th Cir. 1990).  Accordingly, this court must consider a suit against Glover in his official

capacity as sheriff of Houston County, Alabama and against Seay in her official capacity as

a deputy sheriff as a suit against the State of Alabama.  Because the Eleventh Amendment

bars suits against the state in federal court, in the absence of consent, this Court has no

jurisdiction to hear any claims for monetary damages against Glover or Seay in their official

capacities.

Perhaps recognizing this bar to her seeking claims for damages from Glover or Seay

in their official capacities, Duke has carefully alleged in the Amended Complaint that she has

*only* sued Glover and Seay in their official capacities for "injunctive relief."  *See* Doc. # 21

at n.1 & n.2.[12]  Indeed, Duke specifies that she does not seek either compensatory damages

---

[12]  These two footnotes contain the same text.  That text is as follows:

> For clarification purposes, these defendants are sued in their official capacities
> for *injunctive relief only* as a result of violations of the plaintiff's *Fourth
> Amendment rights to procedural due process*.  The plaintiff does not seek
> compensatory or punitive damages against these defendants in their **official
> capacities** only.

*See* Doc. # 21 at n.1 & n.2 (emphasis in bold in original; emphasis in italics added).  Because
this identical "clarification" is in both Count I and Count II, the Court must assume that Duke
intended to limit her request for relief as she has indicated.  This means that her prayer for
relief against Glover and Seay for prospective injunctive relief is not barred by the Eleventh
Amendment.   However, this also means that the only injunctive relief requested is that
specified in the clarification notes which is *injunctive* relief directed at preventing violations
of Duke's rights under the *Fourth Amendment* to the United States Constitution, namely her
malicious prosecution claim.  ***Accordingly, the Court finds that the allegations of the
Amended Complaint against Glover and Seay do not include a request for any injunctive
relief in connection with Count II of the Amended Complaint (Fourteenth Amendment
violation claim)***.  That claim, which was brought against Houston County, Glover, and Seay,

or punitive damages from either Glover or Seay in their official capacities.

## 2.  Viability of Request for Injunctive Relief

While, the Eleventh Amendment has been construed to bar suits against a state brought by that state's own citizens, absent the state's consent, there exists a well-recognized exception to this general rule "for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *McClendon v. Ga. Dep't of Cmty. Health,* 261 F.3d 1252, 1256 (11th Cir.2001) (emphasis in original).  *See also Ex parte Young,* 209 U.S. 123, 159-60 (1908).

> In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) (O'CONNOR, J., joined by SCALIA and THOMAS, JJ., concurring in part and concurring in judgment); see also *id.*, at 298-299, 117 S. Ct. 2028 (SOUTER, J., joined by STEVENS, GINSBURG, and BREYER, JJ., dissenting).

*Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).  In

---

refers in ¶¶ 52 and 53 to a request for injunctive relief, but given the limiting specification in footnote 2 this request for injunctive relief can only be read an claim for injunctive relief against either Houston County or against Glover or Seay only in their *individual capacities*.  Footnote 2 precludes any reading of the Amended Complaint as containing a claim for injunctive relief against either Glover or Seay in their official capacities for a claim under the Fourteenth Amendment.  ***Moreover, the Court further finds that the allegations of the Amended Complaint against Glover and Seay do not include any request for declaratory relief in connection with either Count I or Count II of the Amended Complaint.***  While the Amended Complaint purports to seek declaratory relief, it does not do so against Glover and Seay in their official capacities.  *See* Doc. # 21 at n.1 & n.2.

this case, the injury Duke alleges as her Fourth Amendment violation was the failure of Glover and Seay to believe her claim that McCallister had sexually assaulted her and her prosecution on a charge of false reporting of a crime. Clearly, she has not alleged an on-going violation of her rights under the Fourth Amendment to be free from malicious prosecution. Moreover, the Court is not convinced that the permanent injunction Duke seeks is actually prospective relief.[13]

Federal courts have jurisdiction only over concrete cases and controversies. U.S. Const. Art. 3, § 2, cl. 1. A plaintiff will generally have standing only where (1) he experienced injury in fact, (2) the injury is fairly traceable to the defendant's conduct, and (3) his harm is likely to be redressed should the court order relief. A plaintiff seeking injunctive or declaratory relief, however, must prove not only an injury, but also "a real and immediate threat of future injury in order to satisfy the 'injury in fact' requirement." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-05 (1983) (holding that because injunctions regulate future conduct, a party has standing to seek injunctive relief only if he alleges a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury); *Nat'l Parks*

---

[13]  Plaintiff ask for a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants and at the defendants' requests from continuing to violate the Fourth Amendment. Doc. # 21 at p. 15. However, the Fourth Amendment violation alleged was that she was maliciously prosecuted, but that she was later acquitted on the charge of making a false police report. Crediting the allegation that she was acquitted requires this Court to find that the violation of her Fourth Amendment rights actually alleged was completed as of the date on which she was acquitted and was not continuing in nature.

*Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985).  Where, as here, the threat of future harm dissipates, the plaintiff's request for prospective injunctive relief becomes moot.  *See, e.g., Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477-78 (11th Cir. 1997); *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985).  *Accord, Rhoden v. Randall*, No. 96-6137, 1997WL570346 at *2 (6th Cir. Sept. 11, 1997) (holding that injunctive relief requested for malicious prosecution was rendered moot when underlying conviction was vacated); *Berry v. South Carolina Dep't of Social Servs.*, No. 95-2678, 1997 WL499950 at *4-*5 (4th Cir. Aug. 25, 1997) (affirming dismissal of claims for injunctive relief to prevent future malicious prosecution on ground that claims were moot when prosecution against plaintiff had been terminated long before suit).

Here, with respect to the alleged actions giving rise to her claims that her rights under the Fourth Amendment were violated, Duke alleges that the charges against her were "thrown out" and that she "was acquitted on all charges."  Doc. # 21 at ¶¶ 24 & 35.  Thus, there is no factual basis alleged in the Amended Complaint that could plausibly support her conclusion that she is suffering and will continue to suffer irreparable injury unless the Court grants the requested injunctive relief.  For this reason, the Court finds that the claims against Glover and Seay in their official capacities for injunctive relief are due to be DISMISSED.

### 3.  Adequacy of Allegations of Basis for Official Capacity Liability

Under § 1983, there is no *respondeat superior* liability; a municipality or county may

not be sued under § 1983 for the acts of others.  *See Monell*, 436 U.S. at 691-94; *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988); *Brown*, 188 F.3d at 1290 ("A governmental entity is not liable under § 1983, merely as a matter of *respondeat superior,* for constitutional injuries inflicted by its employees."); *Gold,* 151 F.3d at 1350 (municipality may not be liable for the wrongful actions of its police officers pursuant to a *respondeat superior* theory of liability).  "Instead, a municipality [or county] may be held liable for the actions of a police officer only when municipal [or county] 'official policy' causes a constitutional violation."  *Gold,* 151 F.3d at 1350.  It is incumbent upon a plaintiff seeking to hold a municipality or county liable pursuant to § 1983 to identify the municipal or county policy or custom that he contends caused his injury to be inflicted.  *Id.*

In *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474 (11th Cir.1991), the Eleventh Circuit explained that a plaintiff can establish governmental entity liability under §1983 in either one of two ways.  First, liability may attach if a plaintiff demonstrates "a widespread practice that, 'although not authorized by written law or express municipal policy, causes a constitutional deprivation and is so permanent and well settled as to constitute a custom and usage with the force of law.'" *Id*. at 1481 (quoting *Praprotnik,* 485 U.S. at 127).  Second, a plaintiff can establish the liability of a municipality or county by showing that his or her alleged constitutional injury was caused by a person who "possess[ed] 'final authority to establish municipal [or county] policy with respect to the action ordered.'" *Id.* at 1480 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)); *see also Jett v. Dallas*

19

*Ind. Sch. Dist.,* 491 U.S. 701, 737 (1989); *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir.1994).

Duke's factual allegations make no mention whatsoever of any written official policy. She fails to include in the Amended Complaint any factual allegations of any widespread practice so permanent and well settled as to constitute a custom and usage with the force of law. Duke makes no allegation whatsoever regarding Seay or Glover as a policymaker of any sort. To the extent that Seay and Glover are sued in their official capacities, these failures to plead requisite factual grounds in support of Duke's claims require the Court to dismiss the claims as insufficient. For this additional reason, the motion to dismiss these claims is due to be GRANTED.

**C. Duke's Federal Claims Against Glover and Seay in Their Individual Capacities**

    **1. Legal Paradigm**

While the Eleventh Amendment shields state officers from damage suits in their official capacities, these officials are individually amenable to suit under 42 U.S.C. § 1983 for violations of the United States Constitution and federal law. *See Graham*, 473 U.S. at 165-67. However, a government official sued in his individual capacity under § 1983 may assert qualified immunity as an affirmative defense if he was performing a discretionary function. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Id*. If the

plaintiff fails to furnish sufficient factual allegations at this stage, the defendant officer is entitled to judgment. *See Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001). In this case, there is no dispute as to whether Glover and Seay were engaged in discretionary functions.

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court delineated a two-step analysis for determining whether an officer, who was engaged in a discretionary function, is eligible for qualified immunity. The initial inquiry focuses on whether the plaintiff's allegations, if considered true, show that the officer violated a constitutional right. *Id*. The absence of a constitutional violation ends the inquiry. *Id*. However, where a court does find that an officer acted in an unconstitutional manner, the analysis turns to whether the right in question was clearly established so that the officer had fair warning that his conduct was constitutionally prohibited. *Id*.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). This standard does not require a prior court decision to have declared the precise set of facts presently alleged unlawful, "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 438 U.S. 635, 640 (1987). "The salient question. . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope*, 536 U.S. at 741.

21

The Eleventh Circuit has further refined the analysis of when the law is clearly established. It has observed that "fair and clear" notice may be given by (1) the "obvious clarity" of the pertinent federal statute or constitutional provision, such that qualified immunity may be overcome in the "total absence of case law," (2) the judicial determination that certain conduct has been defined as unlawful without regard to particular facts, and (3) holdings in specific cases that are tied to certain facts. *Vinyard v. Wilson*, 311 F.3d 1340, 1350-51(11th Cir. 2002) (emphasis removed). Only the decisions of the Supreme Court, the Eleventh Circuit, or the highest court in the state in which the case arose provide the case law capable of clearly establishing the boundaries of rights in the qualified immunity analysis. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

### 2. Fourth Amendment / Malicious Prosecution Claim

Glover and Seay contend that Duke has failed to adequately alleged a claim pursuant to 42 U.S.C. § 1983 for an alleged violation of her right under the Fourth Amendment to be free from malicious prosecution. The Eleventh Circuit Court of Appeals has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (collecting cases recognizing this). "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami,* 382 F.3d 1220, 1234 (11th Cir. 2004). *Accord, Wood*, 323 F.3d

22

at 881.  The elements of malicious prosecution under Alabama common law are: "1) a
criminal prosecution instituted or continued by the present defendant; (2) with malice and
without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused
damage to the plaintiff accused."  *Id.* at 882 (citing *Delchamps, Inc. v. Bryant*, 738 So .2d
824, 831-32 (Ala. 1999)).

Glover and Seay point out that the Amended Complaint is devoid of any allegation
and of any facts that plausibly suggest the required element that Glover and Seay acted
without probable cause.  While Duke does allege facts that suggest that Glover and Seay
acted with malice and possibly with a retaliatory motive, these facts do not plausibly support
a lack of probable cause.  As the United States Supreme Court long ago explained with
regard to a malicious prosecution claim,

> [m]alice alone, however, is not sufficient to sustain the action, because a
> person actuated by the plainest malice may nevertheless prefer a well-founded
> accusation, and have a justifiable reason for the prosecution of the charge.
> Want of reasonable and probable cause is as much an element in the action for
> a malicious criminal prosecution as the evil motive which prompted the
> prosecutor to make the accusation; and though the averment is a negative one
> in its form and character, it is nevertheless a material element of the action,
> and must be proved by the plaintiff by some affirmative evidence, unless the
> defendant dispenses with such proof by pleading singly the truth of the several
> facts involved in the charge.  Either of these allegations may be proved by
> circumstances, and it is unquestionably true that want of probable cause is
> evidence of malice, but it is not the same thing; and unless it is shown that both
> concurred in the prosecution, or that the one was combined with the other in
> making or instigating the charge, the plaintiff is not entitled to recover in an
> action of this description.  According, it was held in Forshay v. Ferguson, 4
> Den., 619, that even proof of express malice was not enough without showing
> also the want of probable cause; and the court go on to say, that however

> innocent the plaintiff may have been of the crime laid to his charge, it is
> enough for the defendant to show that he had reasonable grounds for believing
> him guilty at the time the charge was made....It is true as before remarked, that
> want of probable cause is evidence of malice for the consideration of the jury;
> but the converse of the proposition cannot be sustained.

*Wheeler v. Nesbitt*, 65 U.S. 544, 549-51 (1860).  *Accord, Stacey v. Emery*, 97 U.S. 642

(1878); *Delchamps, Inc. v. Larry*, 613 So. 2d 1235 (Ala. 1992) ("Malice is an inference of

fact and may be inferred from the lack of probable cause *or from mere wantonness or*

*carelessness*.") (emphasis added).   The only allegation in the Amended Complaint

concerning probable cause is the allegation that Seay stated in a complaint in which she

stated that she had probable cause for believing that Duke unlawfully and knowingly made

a false report of a crime.  Doc. # 21 at ¶ 22.  The Court agrees that the Amended Complaint

fails to identify facts that are suggestive enough to plausibly render the actions of Seay and

Glover without probable cause.  Duke's failure to support this claim by adequate factual

allegations in support of all requisite elements constitutes failure to state a claim.

Accordingly, the motion to dismiss the malicious prosecution claim is due to be GRANTED.

### 3.  Fourteenth Amendment / Equal Protection Violation Claim

Glover and Seay contend that Duke has failed to adequately allege a violation of her

rights under the Equal Protection Clause of the Fourteenth Amendment.  Duke has posited

that the Defendants' treatment of her was motivated by an invidious gender animosity in

violation of the Fourteenth Amendment's Equal Protection Clause.  Specifically she alleges

that "defendants discriminated against [her] on the basis of her gender, female, in that they

24

discounted her statements and allegations of sexual assault, choosing instead to rely upon the allegations of a male, defendant McCallister."  Doc. # 21 at ¶ 45.

"The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner."  *Gary v. City of Warner Robins, Ga.,* 311 F.3d 1334, 1337 (11th Cir. 2002).  "To properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately."  *Thigpen v. Bibb County*, 233 F.3d 1231, 1237 (11th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  Because Duke has failed to allege that the governmental agents whom she claims violated her rights treated *similarly situated* persons in a disparate manner, she has failed to state a claim for which relief can be granted with respect to this claim.

While the Amended Complaint also includes many allegations relating to the way that Seay, a woman, treated Duke during the interview, it is devoid of any allegations that Seay treated McCallister any differently when she interviewed him.  It is alleged that Seay interviewed both McCallister and Duke.  It is also alleged that Seay asked both McCallister and Duke to submit to a lie detector examination and that both of them agreed to do so. Furthermore, Duke's Amended Complaint does not contain any allegation that Seay, Glover or Houston County had any official policy or custom of treating female crime victims, like Duke, differently than male crime victims.  Duke's allegations in support of this claim are limited to Seay's alleged discounting of Duke's allegations and statements and her alleged

25

reliance upon McCallister's account of the events leading up to Duke's complaints against him.  With respect to Duke's allegations, however, McCallister and Duke are not similarly situated.  She is a crime victim and he is the accused.  Moreover, if Duke's own allegations are to be believed Seay's own remark gives a gender neutral reason for any disparate treatment, namely McCallister's status as an employee of the Houston County Sheriff's Department.  Having failed to allege disparate treatment of similarly situated individuals, Duke has failed to allege a Fourteenth Amendment violation and this claim is due to be DISMISSED.

**D.  State Law Claims**

In addition to Duke's claims pursuant to 42 U.S.C. § 1983, Duke bring a number of claims pursuant to Alabama law.  This Court has supplemental subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  The statutory provision addressing supplemental jurisdiction provides that

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Thus, Section 1367(a) provides a basis for this Court to exercise jurisdiction over Duke's claims against the remaining defendants in this action pursuant to Alabama law because it has jurisdiction over Duke's related claims against them pursuant

26

to 42 U.S.C. § 1983.  However, the requirement contained in § 1367(a) that this Court exercise its supplemental jurisdiction over Duke's state law claims is subject to certain enumerated instances in which it is appropriate for a federal court to decline to exercise its supplemental jurisdiction over a case.  Those circumstances are set forth in Section 1367(c), which provides that

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Court finds that claims before this Court pursuant to § 1367(a) present novel or complex issues of Alabama law.  Additionally, the federal claims over which this Court had original jurisdiction have now been resolved against Duke.  Pursuant to 28 U.S.C. § 1367(c)(1) & (3), the Court declines to exercise supplemental jurisdiction over Duke's claims pursuant to Alabama law.  All of Duke's claims pursuant to Alabama law will accordingly be DISMISSED WITHOUT PREJUDICE.  This dismissal should not work to Duke's disadvantage should she elect to bring suit in state court because the period of limitations for any of these claims is tolled during the pendency of this action.  *See* 28 U.S.C. § 1367(d).

**CONCLUSION**

For the foregoing reasons, the Court finds that all federal claims remaining in Duke's Amended Complaint over which this Court has original subject matter jurisdiction, are due to be DISMISSED.  Having disposed of these claims, the Court declines to exercise supplemental jurisdiction over Duke's remaining claims pursuant to Alabama.  Moreover, having disposed of all of Duke's federal claims on the grounds articulated above, the Court need not and does not address any of the other arguments made in the motion to dismiss. This does not mean that the arguments are not correct; it simply means that the Court cannot justify a further expenditure of scarce judicial research on a detailed discussion of matters such as the viability of Duke's claims for punitive damages when it has already found that the causes of action by which the damages are claimed are due to be dismissed.  Accordingly, it is hereby ORDERED as follows:

1.  The Defendants Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 28) is GRANTED to the extent that it is directed to the claims brought pursuant to 42 U.S.C. § 1983 and DENIED to the extent that it is directed to the claims brought pursuant to Alabama law.

2.  All of Duke's claims against Houston County, Glover, and Seay pursuant to 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE.

3.  The Court declines to exercise supplemental jurisdiction over Duke's claims pursuant to Alabama law and such claims are DISMISSED WITHOUT PREJUDICE.

28

4.   A separate final judgment will be entered consistent with this Memorandum Opinion and Order.

DONE this the 31st day of March, 2008.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE